# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JORDAN DENAE KEEVER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 25-CV-14-GLJ** |
| ) | |
| **FRANK J. BISIGNANO,**[1] ) | |
| **Commissioner of the Social** ) | |
| **Security Administration** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Claimant Jordan Denae Keever requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that she

---

[1] On May 6, 2025, Frank J. Bisignano became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted for Mr. Dudek as the Defendant in this action.

is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th

---

[2] Step one requires Claimant to establish that she is not engaged in substantial gainful activity. Step two requires Claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or her impairments *are not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that Claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if Claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 35 years old at the time of the administrative hearing. (Tr. 33, 215). She has at least a high school education and alleges an onset date of July 14, 2022, due to limitations imposed by scoliosis, osteogenesis imperfecta, depression, anxiety, arthritis in the back, and endometriosis. (Tr. 304-10).

## Procedural History

On September 22, 2022, Claimant applied for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, as well as supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 215-24, 228-32). Administrative Law Judge ("ALJ") Dierdre Dexter held an administrative hearing and determined Claimant was not disabled in a written opinion dated May 10, 2024. (Tr. 14-68). The Appeals Council denied review, making the ALJ's opinion the final decision for purposes of this appeal. (Tr. 1-4) *See* 20 C.F.R. §§ 416.1484(d).

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. (Tr. 23-24). At step two she determined Claimant had the severe impairments of degenerative disc disease, bursitis, and brittle bone disease (osteogenesis imperfecta), as well as the non-severe impairments of asthma, depressive disorder, and anxiety disorder. (Tr. 16). She found at

step three that Claimant did not meet any Listing. (Tr. 17-17). At step four she found Claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except she can occasionally reach overhead and frequently reach in all other directions, and only occasionally stoop, kneel, crouch or crawl, but not climb. (Tr. 18). The ALJ did not assess any psychologically-based limitations. (Tr. 18). The ALJ then concluded that Claimant was not disabled because there was work she could perform in the national economy, *i.e.*, surveillance system monitor, document preparer, touchup screener, and addresser. (Tr.24-25).

## Review

Claimant contends the ALJ erred by failing to: (1) assess Claimant's diagnosed chronic pain syndrome, (2) properly evaluate Claimant's subjective symptoms, and (3) include non-exertional limitations to account for Claimant's anxiety and depressive disorder. The Court finds these arguments without merit.

The relevant medical evidence reveals that Claimant routinely sought treatment between August 2020 and July 2022 for pain caused by scoliosis and osteogenesis imperfecta. (Tr. 486-524). Claimant was diagnosed with chronic pain syndrome in December 2021 and frequently presented to appointments with an abnormal gait, generally described as severe lordosis. (Tr. 496, 502, 505, 508, 519, 522, 525). Claimant underwent a posterior spinal fusion from T3 to her pelvis on July 14, 2022, performed by Timothy Puckett, M.D. (Tr. 445, 451-61). Claimant was provided with a back brace and responded well to the surgery but complained of some shoulder pain at the three-month follow-up and interscapular pain that impacted her ability to perform her activities of daily living

-4-

("ADLs") in January 2023, at which point she established care with physical therapy. (Tr. 462-82, 538). Claimant continued to seek treatment for pain management, reporting ongoing but stable pain through June 2023, at which time she indicated she "usually runs good." (Tr. 530, 533, 634-37). Claimant returned to Dr. Puckett for a one-year follow-up in July 2023, where X-rays of Claimant's spine "look[ed] fantastic [and showed] no change in spite of her" osteogenesis imperfecta. (Tr. 545). Dr. Puckett noted there was "not a lot" they could do about Claimant's pain, but he was "going to let her do what she wants" and only have her return as necessary. (Tr. 545). Claimant continued to follow-up with her pain management visits throughout the remainder of 2023 where she continued to present with an abnormal gait, thoracic spinal tenderness on palpation, and limited range of motion. (Tr. 612-28).

As to mental impairments, the record in January 2021 reflects Claimant was psychologically stable but had a poor quality of life due to her pain and responsibility for taking care of her father. (Tr. 504). Claimant was diagnosed with generalized anxiety disorder in 2022 (Tr. 638), and indicated she experienced depression during a physical therapy appointment in January 2023 (Tr. 480) and in her function report dated March 2023 (Tr. 320). Otherwise, Claimant's mental status examinations were generally non-remarkable, *i.e.*, she presented alert and oriented, with a euthymic mood, intact memory, good insight, and appropriate judgment. (Tr. 499-540)

In 2023, state examiners determined initially and upon reconsideration that Claimant could perform a full range of light work. (Tr. 89-90, 98-100). State agency psychological consultants, Erika Stevens Olinger, Ph.D. and Stephen Scott, Ph.D.,

determined initially and upon reconsideration that Claimant had the non-severe medically determinable impairments of anxiety and depression which resulted in mild impairments in her ability to interact with others and concentrate, persist or maintain pace, but resulted in no functional limitations. (Tr. 87-88, 98-100).

At the administrative hearing, Claimant testified she was diagnosed with osteogenesis imperfecta shortly after her birth and underwent various surgeries due to complications stemming therefrom. (Tr. 47-49). Since her spinal surgery in July 2022, Claimant has experienced numbness in her left leg and is unable to feel the floor with her right foot due to instrumentation in her right leg. (Tr. 50). Claimant is imbalanced when standing and cannot stand for a period longer than five minutes due to pain and her inability to feel the ground. (Tr. 50-51). She does not utilize an assistive walking device but wears a back brace continuously and must sit down for fifteen to twenty minutes before she can stand up again. (Tr. 51). As to pain, Claimant testified she experiences pain in her shoulders that radiates down into her hands and her left elbow. (Tr. 55). She takes the maximum dose of her prescribed narcotic medications and, as of the date of the administrative hearing, was experiencing a sharp, shooting pain she rated as an 8 out of 10. (Tr. 53-55).

The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs Claimant could perform given the RFC described above. (Tr. 59-67). The VE testified that such a claimant could perform the representative jobs of surveillance system monitor, document preparer, and touchup screener. (Tr. 61-62). The ALJ then offered a modified hypothetical in which a claimant would miss on average two days a month. (Tr. 63). The

VE testified that such a person would likely be unemployable beyond a period of four months. (Tr. 64).

In her written opinion at step four, the ALJ extensively summarized Claimant's hearing testimony and most of the medical evidence in the record. (Tr. 18-23). She then found that Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with treatment records. (Tr. 20). She found the opinions of the state agency physicians unpersuasive but supported by their limited review of the record. (Tr. 22). Conversely, she found the opinions of the state agency psychologists persuasive, supported by the record, and consistent with the normal mental status examinations and lack of reports of mental health issues and lack of specialized mental health treatment. (Tr. 22).

## I.    Subjective Symptom Analysis

Claimant first argues the ALJ erred at step four in evaluating her subjective symptoms, asserting the ALJ did not address the appropriate factors. The Court finds this argument without merit.

The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second ... we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e.g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-94 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).

ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

Claimant argues the ALJ denied Claimant's subjective symptoms based solely on the objective evidence and failed to address the factors above. However, upon review of the record, the Court finds the ALJ set out the appropriate analysis and cited evidence supporting her reasons for finding Claimant's subjective complaints as to her pain and her limitations were not believable to the extent alleged, *i.e.*, she gave clear and specific reasons that were specifically linked to the evidence in the record. In particular, the ALJ discussed, *inter alia*, Claimant's hearing testimony regarding her daily activities, the various narcotics she took for pain, her spinal surgery and the physical therapy appointments thereafter, and ultimately concluded Claimant's pain is not as debilitating as alleged. (Tr. 20-22). There is no indication here that the ALJ misread the Claimant's medical evidence taken as a whole, and her evaluation of Claimant's subjective statements is entitled to deference. *See Casias*, 933 F.3d at 801.

## II.    Chronic Pain Syndrome

Claimant next challenges the ALJ's RFC assessment, contending that the ALJ erred at step four by failing to account for her chronic pain syndrome in conjunction with her other impairments. Although the ALJ did fail to discuss Claimant's chronic pain syndrome at step two, the ALJ did consider it at step four. As such, the Court finds no reversible error here.

At step two, the ALJ failed to classify or address Claimant's chronic pain syndrome. However, this failure is not reversible error in and of itself, as the ALJ's determination that Claimant had other severe impairments required the ALJ to account for Claimant's chronic pain syndrome at step four, even if it did not amount to a severe impairment. *See, e.g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("At step two, the ALJ must 'consider the combined effect of all of [Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004)).

Although the ALJ did not expressly address Claimant's chronic pain syndrome at step two, she did consider Claimant's pain and chronic pain syndrome in her decision and in formulating her RFC. Indeed, the ALJ evaluated Claimant's subjective statements of pain and discussed, *inter alia*, Claimant's (i) July 2022 spinal surgery and the pain she reported thereafter, (ii) physical therapy, and (iii) pain management visits during which she reported "stable pain" but presented with abnormal gait and thoracic tenderness. (Tr. 20-22). Additionally, the ALJ explicitly acknowledged Claimant had various diagnoses which "included other poly-osteoarthritis, other idiopathic scoliosis thoracic region, osteogenesis imperfecta, other abnormalities of gait and mobility, and *chronic pain syndrome*." (Tr. 21) (emphasis added). As such, the court finds no error in the ALJ's consideration of Claimant's chronic pain syndrome. She specifically discussed the global evidence in the

record and the opinion reflects she considered all of Claimants impairments when assessing her RFC. *Baker v. Berryhill*, 2018 WL 1096868, at *2 (W.D. Okla. Feb. 28, 2018) ("[T]he ALJ generally discussed and stated she considered the combined effects of Plaintiff's wrist surgeries, fibromyalgia, chronic pain, and her neck condition. Further, it is well established that 'the mere diagnosis of a condition does not establish its severity or any resulting work limitations.' Thus, the ALJ adequately addressed the conditions with which Plaintiff takes issue.") (quoting *Paulsen v. Colvin*, 665 Fed. Appx. 660, 666 (10th Cir. 2016) (internal alterations omitted); *Vandenbosch v. Comm'r of Soc. Sec.*, 2022 WL 22761436, at *3 (E.D. Okla. Sept. 22, 2022) (finding ALJ adequately discussed the claimant's chronic pain syndrome, despite considering it a non-severe impairment, where the ALJ considered Claimant's reports of pain and his various treatments for pain throughout the decision); *See also Michael L.M. v. Kijakazi*, 2022 WL 4596155, at *4 (N.D. Okla. Sept. 30, 2022) ("Likewise, regarding plaintiff's assertion that his chronic pain syndrome was ignored, the record is silent as to any limitations resulting from plaintiff's chronic pain syndrome; the record merely states that plaintiff has been diagnosed with this medical problem.")

Relatedly, Claimant also maintains that ALJ's RFC is not supported by substantial evidence because she found the State agency physicians' opinions unpersuasive, leaving no opinion to support her RFC assessment. The Court disagrees and finds the ALJ's RFC is supported by substantial evidence.

"[I]n cases . . . where the medical opinions appear to conflict with the ALJ's decision regarding the extent of a claimant's . . .impairments to the point of posing a 'serious[] challenge [to] the ALJ's [RFC] assessment,' . . . . it may be inappropriate for the ALJ to

reach an RFC determination without expert medical assistance[.]" *Wells v. Colvin*, 727 F.3d 1061, 1072 (10th Cir. 2013) (quoting *Andrande v. Sec'y of Health & Hum. Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993)). Here, there is not a medical opinion in the record that contradicts the ALJ's physical RFC determination and Claimant points to no significant probative evidence the ALJ did not consider. The ALJ explained her reasoning for tempering the findings of the state agency physicians in Claimant's favor, indicating that the restriction to sedentary work accounts for Claimant's pain and lifting limitations while also considering her positive x-rays in July 2023, mild examination findings, and lack of continued treatment by Dr. Puckett. *Troutman v. Kijakazi*, 2022 WL 2960134, at *4-5 (W.D. Okla. July 26, 2022) (finding the ALJ did not "play doctor" when the ALJ proffered an adequate explanation for rejecting the [medical opinion] and determined Plaintiff's RFC based on the evidence of record[.]"); *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012) (finding an ALJ does not commit reversible error by tempering a medical opinion for the Claimant's benefit); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician is charged with determining a claimant's RFC from the medical record.").

Contrary to Claimant's arguments, the ALJ discussed all the evidence in the record and the ALJ's reasons for reaching her RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 291 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [she] can determine RFC within that category.'" (quoting Howard, 379 F.3d at 949). The evidence does not reflect that Claimant had further physical limitations than

those posed in the RFC. The ALJ clearly considered the state agency physicians' reports and Claimant's pain while Claimant points to no evidence providing further limitations than those assessed. Because Claimant points to no evidence other than her own assertions, the Court declines to find error here. *See Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority."). When all the evidence is taken into account, the conclusion that Claimant could perform the RFC stated above is well supported by substantial evidence. The Court finds no error in the ALJ's failure to include any additional limitations as to Claimant's RFC.

### III.    Mental RFC

Lastly, Claimant asserts the ALJ erred by not including mental limitations in Claimant's RFC and in the hypothetical question to the VE. Particularly, Claimant faults the ALJ (i) for failing to explain how Claimant's mild limitations in interacting with others and in concentrating, persisting, or maintaining pace did not result in any limitations, as well as failing to discuss (ii) the treatment provider note in December 2021 indicating Claimant was psychologically stable but had a poor quality of life and (iii) the January 2023 physical therapy appointment where she reported she had depression and that pain impacted her ADLs. The Court finds these arguments unpersuasive.

The ALJ determined Claimant had non-severe mental impairments of depressive disorder and anxiety disorder, she assessed the "paragraph B" criteria and determined Claimant had mild limitations in interacting with others and in concentrating, persisting, or

maintaining pace. (Tr. 17-18). Ultimately the ALJ concluded the "paragraph B" criteria were not satisfied because "claimant's medically determinable mental impairments cause no more than [a] 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate there is more than a minimal limitation in the claimant's ability to do basic work activities[.]" (Tr. 18). However, the fact that the ALJ found limitations in the B criteria "does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).

Here, Dr. Olinger and Dr. Scott also concluded Claimant had mild limitations in her ability to concentrate, persist, or maintain pace and in her ability to interact with others but, nonetheless had no functional mental limitations. (Tr. 80, 98). The ALJ found these opinions persuasive and adopted them wholesale explaining that Claimant "endorsed no mental health concerns on her activities of daily living, was on conservative medication management by her primary care provider for mental health, use[s] cannabis to treat anxiety, [has] no history of inpatient hospitalizations, ER visits, or outpatient therapy for mental health, [has] no acute symptoms, [is] functionally independent from a mental health standpoint with regard to basic self-care, and [has] only mild work limitations." (Tr. 22). The ALJ further explained that Claimant's mental state examinations were generally normal, she did not endorse issues stemming from her mental health, and the record contained no specialized mental health treatment. (Tr. 22).

As such, the Court finds no error in the ALJ's consideration of the evidence of Claimant's mental impairments, the hypothetical question to the VE, or the resulting RFC assessment. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) (finding that in positing

a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ); *Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment.") (citations omitted). Although the ALJ did not provide a summary of Claimant's mental health evidence, the ALJ's decisions demonstrate that she did not simply disregard Claimant's mental impairments when considering the RFC, and this Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. *See Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

In sum, the ALJ appropriately assessed the medical record in this case, gave reasons for her RFC determination, and ultimately found Claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard*, 379 F.3d at 949). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (internal citations omitted). The essence of Claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the Court simply may not do. *See, e.g.*, *Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner is affirmed.

## Conclusion

In summary, the Court finds that the correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 19th day of March, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**

-16-